**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **TONYA D.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:18-cv-242** |
| | ) | |
| **ANDREW SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tonya D. ("Tonya") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Tonya alleges that the Administrative Law Judge ("ALJ") erred because substantial evidence does not support: (1) the ALJ's assessment of Tonya's subjective allegations of impairment; (2) the ALJ's physical RFC findings; and (3) the ALJ's assessment of Tonya's obesity.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Tonya's Motion for Summary Judgment (Dkt. No. 20) and **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Tonya failed to demonstrate that she was disabled

1

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). "The threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Tonya analyzes the substantial evidence standard under the mistaken belief that simply identifying some evidence at odds with the ALJ's ultimate opinion on disability establishes that substantial evidence does not support the decision. This is too narrow an understanding of substantial evidence. The ALJ does not have to address every piece of inconsistent evidence. Smith v. Colvin, No. 1:12cv1247, 2015 WL 3505201, at *7 (M.D.N.C. June 3, 2015); see also Brittain v. Sullivan, 956 F.2d 1162 (4th Cir. 1992). Rather, the ALJ must author an opinion which shows how the evidence of record supports the decision made.

Attacking whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)).

## CLAIM HISTORY

Tonya filed for SSI on May 7, 2014, claiming disability due to low back pain radiating into her right leg through her foot, numbness and tingling in the right leg, burning pain and swelling in the right foot, all-over body pain, swelling in both legs, osteoarthritis in both knees, headaches, neck pain, hepatitis C, anxiety and social anxiety, and asthma/borderline COPD and emphysema, with an alleged onset date of May 1, 2007. R. 94–95. To receive SSI, Tonya must show that she has been disabled for at least twelve months prior to the date of filing her disability application. Tonya was 42 years old when she applied for SSI, making her 34 years old and a younger individual on her alleged onset date. R. 94. The state agency denied Tonya's applications at the initial and reconsideration levels of administrative review. R. 94–116. On May 10, 2017, ALJ Kevin Boucher held a hearing to consider Tonya's claim for SSI. R. 56–84. Counsel represented Tonya at the hearing, which included testimony from vocational expert Gerald Wells. R. 56. On August 10, 2017, the ALJ entered his decision analyzing Tonya's claims under the familiar five-step process[2] and denying her claim for SSI benefits. R. 40–50.

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the

The ALJ found that Tonya had not engaged in substantial gainful activity since May 7, 2014, the application date. R. 42. The ALJ determined that Tonya suffered from the severe impairments of osteoarthritis, obesity, back pain, ventral hernia, headaches, chronic obstructive pulmonary disorder (COPD), sleep apnea, and hepatitis C. Id. The ALJ found that Tonya's epicondylitis and anxiety[3] were non-severe medically determinable impairments because they are well-controlled by medication, have not lasted at a severe level for twelve months, or do not cause more than a minimal limitation on her ability to perform basic work activities. R. 43. The ALJ found that Tonya does not have an impairment or combination of impairments that meets or medically equals a listing, specifically considering listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 3.02 (chronic respiratory disorders). R. 44–46.

The ALJ concluded that Tonya retained the residual functional capacity ("RFC") to perform light work with only a few limitations. R. 46. Tonya could occasionally stoop, kneel, crouch, crawl, push/pull with her lower extremities, and climb ladders, ramps, ropes, scaffolds, and stairs. Id. The ALJ determined that Tonya is unable to perform her past relevant work as a laborer and mobile home installer. R. 49. Based on Tonya's age, education, work experience, and RFC, the ALJ determined that Tonya could perform jobs that exist in significant numbers in the national economy, such as maid, folder, and cafeteria attendant. R. 49–50. Thus, the ALJ concluded that Tonya was not disabled. R. 50. Tonya appealed the ALJ's decision and the Appeals Council denied her request for review on March 31, 2018. R. 1–6.

---

claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3] In evaluating the "paragraph B" criteria, the ALJ determined that Tonya had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. R. 43–44.

## ANALYSIS

Tonya alleges that the ALJ erred because substantial evidence does not support the ALJ's (1) assessment of Tonya's subjective allegations of impairment, (2) physical RFC findings, and (3) assessment of Tonya's obesity.

### A.  Medical History

1.  Physical Impairments[4]

Tonya complained of right ankle pain throughout the relevant period, including in August 2012 (R. 311), December 2013 after a sprain (R. 331), May 2015 with negative x-rays (R. 580, 582), August 2015 after another sprain (R. 413–15), and January 2016 for yet another sprain (R. 592). She alleged that her right ankle required surgery, although there is no indication of a surgery in the records. R. 412. At an orthopedic evaluation in September 2015, x-rays showed no fracture. R. 723. She was diagnosed with peroneal tendinitis, later amended to osteoarthritis, and given a walking boot and over-the-counter medications for pain. R. 712–14, 718. In October 2015, Tonya was evaluated for physical therapy for her ankle, but was discharged in November 2015 after cancelling two appointments and not showing for another. R. 589.

Tonya also regularly complained of back pain. A May 2011 MRI showed mild degenerative disc disease (DDD) at L4-L5 and L5-S1 with no significant stenosis. R. 458. She was later referred for a lumbar spine evaluation in August 2015. R. 415. She described lower back pain that radiates into her right leg and that is relieved somewhat by medication. R. 455. An x-ray showed no significant DDD. R. 458. The doctor diagnosed chronic low back pain, partially due to Tonya being overweight, and recommended aquatic physical therapy and over-the-counter medications. R. 459. A subsequent October 2015 MRI revealed no evidence of any lumbar

---

[4] Because Tonya does not allege any error with respect to a mental impairment, I will not discuss any mental conditions.

instability. R. 466. A December 2015 MRI showed that the imaging of Tonya's spine was

"unchanged" since 2011. R. 797. In March 2016, Tonya reported to her primary care doctor that

the MRI showed she had DDD and a herniated disc, but the MRI results did not show these

conditions. R. 521. Tonya continued to complain of lower back pain through at least November

2016. R. 525, 527, 572, 603. Another March 2017 MRI was unremarkable. R. 614. Following a

pain management evaluation in March 2017, Tonya reported some relief from a steroid injection,

but declined muscle relaxants to help with pain. R. 619. The pain management doctor refused to

prescribe narcotic medication because of Tonya's high risk for abuse of such medications. Id.

In January 2017, Tonya returned to her orthopedic doctor for her back pain. It was noted

that Tonya did not go to aquatic PT as previously recommended. R. 643. She complained of new

left-side neck pain, but x-rays were essentially normal. R. 644. In February 2017, x-rays were

again normal, and Tonya was given home exercises and an injection. R. 653. A cervical spine

MRI revealed a left C5-C6 disc bulge with some foraminal stenosis. Id. In April 2017, Tonya

reported that the injection had made her neck worse, but physical therapy and pain management

were still the only suggested treatment options. R. 658, 661.

Tonya was evaluated with left elbow tendonitis in October 2013. R. 328. In June 2016,

Tonya complained to her primary care provider of right elbow pain, for which she had an

evaluation in July 2016. R. 519. The x-ray of her elbow was unremarkable, and Tonya was

diagnosed with lateral epicondylitis and received an injection. R. 491–92.

In March 2015, Tonya had a rheumatology evaluation with Dr. Shanthi Dhaduvai. Dr.

Dhaduvai determined that Tonya did not have rheumatoid arthritis, but instead arthralgia and

knee osteoarthritis. R. 382, 738. Tonya continued to complain of arthralgia and neuropathy in

May 2015. R. 423. At a June 2015 follow-up appointment, Dr. Dhaduvai concluded that Tonya's

6

hepatitis C was the cause of a positive rheumatoid factor in her lab results, especially because Tonya did not have ongoing inflammatory arthritis. R. 738. Tonya continued to complain of joint pain until at least May 2016, for which she was prescribed Neurontin. R. 418–19, 520.

As for other physical impairments, Tonya was assessed for asthma in January 2013 (R. 315) and February 2015 (R. 367). There were also assessments in the record for COPD between April 2015 and March 2016 (R. 413, 423–24, 522), although it is unclear if testing ever confirmed those diagnoses. In August 2015, Tonya was evaluated for her hepatitis C, during which her gastroenterology doctor recommended a twelve-week medication course (but recognized Tonya may have trouble affording the treatment). R. 826, 836. Tonya was also evaluated for sleep apnea in August 2015, for which she was prescribed a CPAP machine. R. 468, 475. In August 2016, Tonya underwent a successful hernia repair. R. 596–600. Over time, different doctors repeatedly told Tonya of the importance of quitting smoking (R. 367, 468, 723) and losing weight and exercising (R. 367, 382, 468, 619, 738). Tonya submitted additional medical evidence to the Appeals Council, ranging from March to December 2017. The records show one mention of neck pain (R. 11) and obesity (R. 20), but otherwise display acute conditions, like bug bites, that Tonya does not allege contribute to her disability.

In her August 2014 function report, Tonya indicated that she prepares sandwiches, frozen dinners, and cereal for herself daily. R. 255. For household chores, she can do laundry but has to take breaks. Id. She has difficulty with house work generally because her aching and swelling caused trouble standing. R. 256. When Tonya leaves her home, she can go out alone. Id. Tonya goes grocery shopping approximately once per month, but uses an electric scooter at the store. Id. She is able to pay bills, count change, handle a savings account, and use a checkbook. Id. For hobbies, Tonya watches television and visits her aunt. R. 257. Tonya indicated that she uses a

cane and foot brace. R. 259.

At the hearing, Tonya testified that she has daily headaches. R. 64. She testified to having numbness and tingling in both arms because of her neck issues. R. 64–65. She described her neck pain as constant, and she cannot lift or carry things because she drops them. R. 65–67. She alleged that her doctor recommended a cervical fusion. R. 77. Tonya also described constant lower back pain that radiates down into her foot, and was going to try injections again. R. 69, 77. Lying down and taking medication help with the pain. Id. Tonya alleged having to lie down three times per day. R. 68. Tonya also testified that the bottoms of her feet burn intermittently. R. 70. She described intermittent swelling in her hands, knees, ankles, and feet, but Neurontin helps. Id. Tonya described that her right leg "gives out" daily. R. 72. She is still able to do chores, though, including sweeping, making beds, and washing dishes, but rests after ten to fifteen minutes. R. 72–73. Tonya testified that she uses her CPAP for sleep apnea (R. 76), uses inhalers daily for asthma but still smokes (R. 78), and cannot afford the recommend hepatitis C treatment (R. 76).

2.  <u>Medical Opinion Evidence</u>

In December 2014, William Humphries, M.D., performed a consultative examination for the state agency. Dr. Humphries indicated that Tonya is a heavy smoker. R. 343. Dr. Humphries diagnosed obesity, asthmatic bronchitis with possible COPD, recurrent headaches, chronic lumbar strain with degenerative joint disease (by history), peripheral neuropathy in both lower extremities, hepatitis C (by history), polyarthropathy including hands and knees with possible degenerative joint disease, and posttraumatic degenerative joint disease (mild) in the right ankle. R. 344. Based on his evaluation, Dr. Humphries found that Tonya would be limited to sitting and standing or walking for six hours in an eight-hour day; could lift twenty pounds occasionally and ten pounds frequently; and could occasionally climb, kneel, and crawl. Id. He found no stooping

or crouching limitations. Id. Dr. Humphries stated that Tonya should avoid heights, hazards, and

fumes, and should not use frequent foot controls. Id. Dr. Humphries referred Tonya for a chest x-

ray and pulmonary function testing. The January 2015 chest x-ray showed no acute pulmonary

disease. R. 347. The pulmonary function testing did not reveal an obstructive lung defect, but

suggested underlying restrictive pattern. R. 353. The technician during the pulmonary function

testing stated that Tonya gave "suboptimal" effort. Id.

In January 2015, as part of the state agency's initial disability determination, Luc Vinh,

M.D., reviewed the record and determined that Tonya's severe medically determinable

impairments included COPD and osteoarthrosis and allied disorders, which were both severe.

R. 99. As part of Tonya's physical RFC evaluation, Dr. Vinh determined that Tonya could lift or

carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours and sit

for six hours in an eight-hour workday; and occasionally push or pull with both lower

extremities. R. 101. For postural limitations, Dr. Vinh found that Tonya could occasionally

crawl, crouch, kneel, and climb ramps, stairs, and ladders (but no ropes or scaffolds). Id. She

could frequently stoop, and could balance without limitation. Id. Dr. Vinh found no

manipulative, visual, communicative, or environmental limitations. R. 102. Dr. Vinh ultimately

concluded that Tonya was capable of performing light work and thus was not disabled. Id.[5]

As part of Tonya's request for reconsideration of the state agency's disability

determination, Richard Surrusco, M.D., evaluated the records in April 2015. He found the same

medically determinable impairments as Dr. Vinh. R. 112. Dr. Surrusco modified Dr. Vinh's RFC

determination slightly and found that Tonya could occasionally climb ropes or scaffolds, and

only occasionally stoop. R. 114. Otherwise, Dr. Surrusco similarly concluded that Tonya is able

---

[5] David Deaver, Ph.D., completed a psychiatric evaluation for Tonya's initial disability application, but found that the record failed to establish any medically determinable mental impairment. R. 99.

to perform light work and was not disabled. R. 115.[6]

Cynthia Shively, FNP-BC, who worked at the clinic where Tonya received her primary care, submitted a letter on Tonya's behalf in July 2016. She stated that Tonya is seen for diabetes, hepatitis, serum positive for rheumatoid arthritis, DDD, hypertension, neuropathy, dyslipidemia, GERD, COPD, and osteoarthritis. R. 488. Ms. Shively indicated that Tonya is unable to sustain regular employment, and in her opinion, Tonya would not improve to the point of being employable. Id.

### B. Tonya's Subjective Allegations of Impairment

Tonya argues that substantial evidence does not support the ALJ's assessment of her subjective allegations of impairment.[7] She alleges that the ALJ did not adequately address the limited extent of Tonya's relevant activities in making his assessment, and failed to build the requisite logical bridge between the evidence and his findings regarding her allegations. Pl.'s Br. at 19–20, Dkt. No. 21. The Commissioner counters that the ALJ sufficiently took into account Tonya's subjective complaints because he discussed her medical history, statements, and testimony, and explained that the record did not fully support Tonya's statements regarding the intensity, frequency, and persistence of her symptoms. Def.'s Br. at 7, Dkt. No. 15.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably

---

[6] During that same reconsideration, Louis Perrott, Ph.D., also found that the record failed to establish any medically determinable mental impairment. R. 112.

[7] In her briefing, this is Tonya's final argument. I consider it first because it is relevant to her other assignments of error.

produce the alleged symptoms, such as pain. Id. at *3; §§ 404.1529(b), 416.929(b) (2017).

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's

symptoms to determine the extent to which they limit the claimant's ability to work.

§§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire

case record, including the objective medical evidence; an individual's statements about the

intensity, persistence, and limiting effects of symptoms; statements and other information

provided by medical sources and other persons; and any other relevant evidence in the

individual's case record." SSR 16-3p, 2017 WL 5180304, at *4. If the frequency or extent of

treatment a claimant seeks is not comparable with the claimant's subjective complaints, an ALJ

may find that the alleged intensity and persistence of an individual's symptoms are inconsistent

with the overall evidence, as long as the ALJ considers the possible reasons the claimant may not

have sought treatment consistent with her complaints. Id. at *9.

Tonya relies upon Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017), for the argument that

an ALJ must provide a nexus between his findings and his conclusion that a claimant's testimony

is not fully credible. Pl.'s Br. at 20–22. Tonya asserts that the ALJ here failed to acknowledge

the limited extent of the activities she described and provided no explanation as to how those

particular activities showed that Tonya could persist through an eight-hour workday. Id. at 21.

"[T]he ALJ must 'build an accurate and logical bridge from the evidence to his conclusion that

[the claimant's] testimony was not credible. . . .'" Brown, 873 F.3d at 269 (quoting Monroe v.

Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). In Brown, the court held that the ALJ erred by

discounting the claimant's credibility based upon daily activities without acknowledging the

limited extent of those activities as described by the claimant or explaining how those activities

showed that he could sustain a full-time job. Id. The court also found that the ALJ erroneously

11

relied upon his own observations and medical judgments in finding that Brown's pain was not as limiting as he claimed because he could sit through the ALJ's hearing, take a psychological test, and manage his own money. Id. at 271.

> Here, the ALJ determined:
>
> [Tonya's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Tonya's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 47. The ALJ then discussed his reasoning throughout the remainder of the opinion. To begin, the ALJ outlined the objective medical findings from examinations in 2015, during which Tonya had some tenderness in her hands, diffuse muscle tenderness, and limited range of motion in her shoulder, but had normal grip strength, normal strength in all extremities, normal spinal range of motion, no swelling or synovitis in her joints, and good range of motion. Id. When she developed joint stiffness and edema in her ankles, it resolved quickly. Id. Tonya had back and right ankle tenderness, but still had good ranges of motion in each joint and a negative straight-leg raise test. Id. The ALJ accurately noted that Tonya's providers referred her to PT, but she attended only the initial evaluation, "suggesting her symptoms were not as severe or as limiting as alleged." Id.

The ALJ then outlined the medical exams relating to Tonya's lower back pain, noting that upon objective examination, the only positive findings were lumbar tenderness, a painful range of motion, and an antalgic gait, which the ALJ accurately noted was caused by her obesity and not neurological deficits. Id. In late 2015 and early 2016, Tonya had normal range of motion in all extremities and no evidence of tenderness or edema. Id. The ALJ accurately observed that she experienced some regression in the next several months, but never anything more than tenderness, range of motion deficits, and episodic muscle spasms. Id. In March 2017, when Tonya displayed mild weakness, a positive facet-loading test, and a positive straight leg-raising

test, the ALJ concluded that, because that was the only example of a positive facet loading and straight leg-raising test in the record, it was "more of an anomaly than any sustained deficit." R. 48. The multiple MRIs that were unremarkable or showed no evidence of lumbar instability further support the limited positive findings identified by the ALJ. Finally, the ALJ observed that Tonya's cervical spine MRI revealed C5-C6 foraminal stenosis, but her physical exam was otherwise benign. Id.

Regarding her respiratory conditions, the ALJ noted the COPD and sleep apnea diagnoses, but observed that pulmonary function testing failed to reveal an obstructive lung defect, and most objective findings showed clear lungs, symmetric air entry, and normal breath sounds. Id. He accurately observed that Tonya had several exacerbations of these conditions during the period at issue, but always "quickly returned to baseline with conservative treatment." Id. Following his review of the medical evidence and his determination that Tonya would be limited to light work because of her tenderness, range of motion deficits, obesity, COPD, and status post hernia repair, the ALJ concluded,

> [Tonya's] negative findings, limited treatment protocol, smoking habit, and retained abilities to care for her personal needs, prepare light meals, clean, shop, walk, pay bills, handle a checking account, manage her own health care, visit[] with friends and family, and watch television and movies suggest she requires no greater limitations.

Id.

Finally, the ALJ outlined the opinion evidence and explained the weight he assigned to each. Id. The ALJ gave great weight to Dr. Humphries's consultative opinion, explaining that his findings were consistent with the record and appropriately balanced Tonya's baseline with her negative findings and daily activities. Id. The ALJ gave great weight to the state agency consultants' opinions for similar reasons. Id. The ALJ accorded little weight to Ms. Shively's

July 2016 letter because her conclusion that Tonya could not sustain regular employment was inconsistent with the record, particularly because of Tonya's actual abilities and negative examination findings. R. 49. Ms. Shively also did not support her statements or describe what Tonya could do. Id.

Elsewhere in his opinion, the ALJ described Tonya's self-reports and testimony in which she stated she could care for her personal needs, perform light household chores, pay bills, handle a checking account, and manage her healthcare. R. 43. She also regularly visits her family members, shops, and attends her medical appointments. Id. The ALJ incorporated Tonya's self-reports into his decision by recognizing what she alleged she could not do. Significantly, unlike the ALJ in Brown, the ALJ here did not rely on his observations or judgments, but instead discussed Tonya's self-reports and testimony, the objective medical evidence, and the medical opinions. Tonya argues that the daily living activities that the ALJ cites are performed intermittently and not indicative of her ability to perform substantial gainful employment. Pl.'s Br. at 19. However, the ALJ described how, over time, providers repeatedly found that Tonya was functioning normally based on objective tests. While Tonya's described daily activities do not preclude a finding of disability, they suggest that she may be overstating her symptoms and limitations. See Dolfax v. Astrue, No. 7:09–cv–67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)). As demonstrated by his explanation, the ALJ found that Tonya's statements regarding the severity of her limitations and pain, based on a detailed consideration of Tonya's medical history along with Tonya's testimony and self-reports, were not entirely credible because they were not fully supported by the objective medical evidence, her treatment history, and her daily

14

activities. R. 18–19, 22–27. The ALJ was entitled to find that the objective medical evidence outweighed Tonya's subjective statements, and he provided a sufficient rationale for doing so.

There is additional evidence in the record to support the ALJ's assertion that Tonya's complaints are not consistent with the objective medical evidence. For example, Tonya repeatedly complained of right ankle pain, but was discharged from PT because she never attended an appointment after the initial evaluation. Regarding her back pain, all of the imaging studies after May 2011 showed no significant DDD; however, she still told her primary care provider that she had DDD and a herniated disc, when that was not the case. Tonya also never went to aquatic therapy for her back as recommended, and she refused muscle relaxants for pain when offered by her pain management provider. PT was also recommended for her neck, but there is no indication in the record that she underwent that. Finally, Tonya testified that she needed a cervical fusion, but there is similarly no evidence in the record of a medical source offering that recommendation.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). The ALJ's conclusions throughout his decision regarding his evaluation of Tonya's subjective complaints provide a logical bridge from the evidence to his conclusion. Accordingly, substantial evidence supports the ALJ's assessment and should not be disturbed.

### C. Physical RFC Findings

Tonya argues that substantial evidence does not support the ALJ's physical RFC findings because the ALJ failed to properly consider Tonya's impairments on a function-by-function basis. Pl.'s Br. at 12, Dkt. No. 21. Specifically, Tonya argues that the ALJ failed to make specific

findings regarding Tonya's inability to maintain a static work posture, her need to lie down during the day or for unscheduled breaks and absences, or any manipulative limitations. Id. at 12–13. Consequently, the ALJ failed to pose proper hypothetical questions to the vocational expert. Id. at 13. The Commissioner counters that the ALJ carefully discussed Tonya's impairments, and the decision as a whole plainly shows that the ALJ considered the combined effects of all of Tonya's impairments when assessing her RFC. Def.'s Br. at 8, Dkt. No. 15.

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities a claimant can perform given the physical or mental impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions reached and any record evidence contradicting the RFC determination. See SSR 96-8p, 1996 WL 374184 (July 2, 1996); see also Monroe v. Colvin, 826 F.3d 176, 189 (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, at *7. In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

16

Tonya's arguments amount to disagreements with the ALJ's RFC determination and she essentially asks the Court to impermissibly reweigh the evidence. Tonya seems to first object—although it is difficult to decipher—to the ALJ's finding that her claimed DDD was not a medically determinable impairment. Pl.'s Br. at 10–11. The ALJ already found "back pain" to be a severe impairment, and Tonya offers no additional functional limitations that would result from including DDD as well. Nor does she offer how the ALJ's decision would or should have been different if "back pain" were re-classified as "DDD." Regardless, while a May 2011 MRI showed *mild* DDD, Tonya's more recent imaging studies from August 2015, October 2015, December 2015, and March 2017 all revealed no significant DDD. Furthermore, the cervical spine MRI did not lead to a DDD diagnosis, either. Overall, it appears that the ALJ actually gave Tonya the benefit of the doubt in finding her back pain to be a severe impairment because imaging studies and objective evidence show that she did not have a definitive DDD diagnosis after 2011, and yet the ALJ still considered her back pain in making his RFC determination.

Tonya next objects to the ALJ's failure to impose environmental limitations for Tonya's COPD. Pl.'s Br. at 11. Dr. Humphries, in his consultative examination, recommended that Tonya should avoid heights, hazards, and fumes. However, Dr. Humphries's recommendation is not binding. Additionally, the ALJ explicitly took Tonya's COPD into account: he stated that the light exertional level of work with postural limitations appropriately accounted for aggravation of Tonya's COPD, which could be affected by increased exertional and/or postural activities. R. 48. The ALJ also accurately observed that Tonya's COPD was at her baseline unless exacerbated by an illness, but even then, she quickly returned to that baseline with conservative treatment. Id. The ALJ plainly considered Tonya's COPD in his RFC determination.

Tonya next objects to the ALJ's failure to find lumbar radiculopathy, peripheral

17

neuropathy, or polyarthropathy to be medically determinable impairments. Pl.'s Br. at 11.

Outside of the consultative examiner's diagnoses, there is no other medical source diagnosing

these conditions, nor any objective medical evidence to support them. I cannot say that the ALJ

erred in failing to find three impairments that cannot be found in the medical records.

Tonya next alleges that the ALJ failed to craft any work-related limitations based on

Tonya's hepatitis C and headaches. Id. Tonya fails to suggest any additional limitations that she

would require because of these conditions; regardless, the ALJ considered the combination of all

of her impairments in crafting his RFC. R. 44, 46. Tonya similarly alleges that the ALJ failed to

include manipulative limitations, or explain why he did not do so, for her polyarthropathy. Pl.'s

Br. at 12. Setting aside the fact that no treating source diagnosed this condition, the ALJ limited

Tonya to only occasional pushing and pulling with her lower extremities. R. 46. Indeed, Dr.

Humphries, who is the only examiner to diagnose polyarthropathy, recommended no frequent

foot controls, which the ALJ adopted. Thus, even without a consistent polyarthropathy diagnosis,

the ALJ adopted the corresponding limitation proposed by the consultative examiner.

Finally, Tonya alleges that the ALJ erred in failing to make specific findings regarding

her alleged inability to maintain a static work posture, need to lie down during the day, and need

to take unscheduled breaks or absences. Pl.'s Br. at 12–13. The record is devoid of any objective

medical evidence to support these limitations, and Tonya fails to point to any. Only Tonya

alleges that she would need to lie down during the day. As discussed, the ALJ did not err in his

assessment of her subjective allegations, and so I cannot find that he erred in not imposing

Tonya's suggested limitations when there is no other evidence to support them.

Consequently, the record does not support Tonya's assertion that the ALJ did not present

proper hypotheticals to the vocational expert regarding her alleged inability to maintain a static

work posture, her need to lie down, and the amount of breaks she would require. For a vocational

expert's opinion to be relevant, it must be rendered in response to a proper hypothetical question

setting forth all of the claimant's impairments. <u>Walker v. Bowen</u>, 889 F.2d 47, 50–51 (4th Cir.

1989). "While questions posed to the vocational expert must fairly set out all of the claimant's

impairments, the question need only reflect those impairments supported by the record." <u>Russell</u>

<u>v. Barnhart</u>, 58 Fed. Appx. 25, 30 (4th Cir. 2003). The ALJ posed to the vocational expert the

hypothetical of a person of Tonya's age, education, and work background who is capable of

performing light exertional work with all of the limitations included in the ALJ's RFC. R. 81. As

discussed, the record does not support that Tonya would need additional limitations; accordingly,

the ALJ did not err in refusing to include these restrictions in his hypothetical to the vocational

expert because his question appropriately reflected the impairments supported by the record.

The ALJ's decision includes the narrative discussion required by SSR 96-8p and contains

sufficient information to allow meaningful review. Contrary to Tonya's assertions, the ALJ did

build a logical bridge between the evidence and his RFC determination. Thus, the ALJ satisfied

his responsibility under SSR 96-8p.

### D.  ALJ's Evaluation of Obesity Under SSR 02-1p

Tonya argues that the ALJ failed to properly consider her obesity under SSR 02-1p in

making his RFC determination. Pl.'s Br. at 15, Dkt. No. 21. The Commissioner counters that the

ALJ did appropriately consider Tonya's obesity because he found it to be a severe impairment

and explained throughout his decision how he considered her obesity. Def.'s Br. at 8–9, Dkt. No.

15. Regardless, Tonya fails to suggest any additional limitations that she would require. <u>Id.</u>

SSR 02-1p defines obesity as "a complex, chronic disease characterized by excessive

accumulation of body fat." Titles II & Xvi: Evaluation of Obesity, SSR 02-1p, 2002 WL

34686281, at *2 (S.S.A. Sept. 12, 2002). SSR 02-1p also recognizes that obesity can cause

limitations in all exertional and postural functions. Specifically, "An individual may have

limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying,

pushing, and pulling. [Obesity] may also affect . . . postural functions, such as climbing,

balanc[ing], stooping, and crouching." 2002 WL 34686281, at *6. When assessing a claimant's

RFC, the ALJ must consider the "effect obesity has upon the [claimant's] ability to perform

routine movement and necessary physical activity within the work environment" as the

"combined effects of obesity with other impairments may be greater than might be expected

without obesity." Id. However, there is no requirement in the regulations that the ALJ include a

lengthy or precise analysis in the opinion. Richards v. Astrue, No. 6:11cv00017, 2012 WL

5465499, at *6 (W.D. Va. July 5, 2012) (internal citations omitted).

Furthermore, to challenge an ALJ's obesity analysis, the claimant must advance

additional, obesity-related functional limitations not accounted for by the ALJ in his RFC

determination. Matthews v. Astrue, No. 4:08CV00015, 2009 WL 497676, at *4 n.4 (W.D. Va.

Feb. 27, 2009); see also Phelps v. Astrue, No. 7:09CV0210, 2010 WL 3632730, at *7 (W.D. Va.

Sept. 9, 2010). That is, Tonya must provide medical evidence establishing functional limitations

caused by her obesity that the RFC does not address. Richards, 2012 WL 5465499, at *13; see

also Barr v. Astrue, No. 510cv00074, 2011 WL 3420844, at *6 (W.D. Va. Aug. 4, 2011) (finding

claimant's high BMI did not require ALJ to include a more detailed analysis in the RFC finding).

The ALJ considered the combination of Tonya's impairments—including her obesity,

seeing as he found at step two that it was a severe impairment—in determining whether her

condition met or medically equaled the severity of a listed impairment. R. 42, 44. Regarding her

back issues, the ALJ discussed Tonya's lumbar tenderness, painful ranges of motion, and

20

antalgic gait, but accurately noted that her obese body habitus caused the antalgic gait. R. 47,

458. The ALJ then explicitly concluded,

> [C]onsidering [Tonya's] tenderness, range of motion deficits, *obesity*, COPD, and
> status post hernia repair, the undersigned limited her to a reduced range of light
> work. Any increase in exertional activity could exacerbate her pain and/or cause a
> re-herniation and her shortness of breath and *obese body habitus* limit her ability
> to bend and lift.

R. 48 (emphases added). Furthermore, the ALJ accorded great weight to Dr. Humphries's

consultative opinion, in which Dr. Humphries diagnosed obesity but found no additional

exertional or postural limitations than those found by the ALJ. R. 344. Tonya does not propose

any additional limitations, much less medical evidence, that would establish functional

limitations caused by her obesity and not already addressed by the RFC. Thus, I find that the

ALJ properly considered Tonya's obesity in compliance with SSR 02-1p.

## <u>CONCLUSION</u>

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the

final decision of the Commissioner, **DENYING** Tonya's motion for summary judgment,

**GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case

from the Court's docket.

The Clerk is directed to transmit the record in this case to Glen E. Conrad, United States

District Judge, and to provide copies of this Report and Recommendation to counsel of record.

Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to

this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or

conclusion of law rendered herein by me that is not specifically objected to within the period

prescribed by law may become conclusive on the parties. Failure to file specific objections

pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion

reached by me may be construed by any reviewing court as a waiver of such objections,

including the waiver of the right to appeal.

Entered:  August 6, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

22