CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 27 2019

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TONYA A. DAVIS, )
)
    Plaintiff, ) Civil Action No. 7:18CV00242
)
v. ) **MEMORANDUM OPINION**
)
ANDREW SAUL, ) By: Hon. Glen E. Conrad
Commissioner of Social Security, ) Senior United States District Judge
)
    Defendant. )

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 1381–1383f. Jurisdiction of this court is established pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g).

By order entered March 11, 2019, the court referred this case to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). On August 6, 2019, the magistrate judge submitted a report in which he recommends that the court affirm the Commissioner's final decision. Plaintiff has filed objections to the magistrate judge's report, and the matter is now ripe for the court's consideration.

The court is charged with performing a de novo review of the magistrate judge's report and recommendation. See 28 U.S.C. § 636(b)(1)(B). In the instant case, the court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence,

considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and citation omitted). Thus, "the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The plaintiff, Tonya Davis, was born on November 14, 1972. She eventually graduated from high school. Ms. Davis has previously worked as a store laborer and mobile home installer. (Tr. 62, 80–81). She last worked on a regular and sustained basis in 2007. (Tr. 62, 233). On May 7, 2014, Ms. Davis filed an application for supplemental security income benefits. In filing her current claim, Ms. Davis alleged that she became disabled for all forms of substantial gainful employment on May 1, 2007, due to lower back pain, numbness and tingling in her right leg, pain and swelling in her right foot, all-over body pain, swelling in both legs, osteoarthritis in both knees, headaches, neck pain, hepatitis C, anxiety, asthma, chronic obstructive pulmonary disorder (COPD), and emphysema. (Tr. 244–45). At the time of an administrative hearing on May 10, 2017, plaintiff amended her application so as to reflect an alleged disability onset date of May 7, 2014. (Tr. 58). Ms. Davis now maintains that she has remained disabled to the present time.

Ms. Davis' application was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated August 10, 2017, the Law Judge also determined, after applying the five-step sequential evaluation process, that Ms. Davis is not disabled. See 20 C.F.R. § 416.920.[1] The

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work in the national economy. 20 C.F.R. § 416.920. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

2

Law Judge found that Ms. Davis suffers from several severe impairments, including osteoarthritis, obesity, back pain, ventral hernia, headaches, COPD, sleep apnea, and hepatis C, but that these impairments do not, either individually or in combination, meet or medically equal the requirements of a listed impairment. (Tr. 42–44). The Law Judge then assessed Ms. Davis' residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 C.F.R. [§] 416.967(b). She can occasionally stoop, kneel, crouch, crawl, push/pull with her lower extremities, and climb ladders, ramps, ropes, scaffolds, and stairs.

(Tr. 46). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Ms. Davis is unable to perform any of her past relevant work. (Tr. 49). However, the Law Judge found that Ms. Davis retains sufficient functional capacity to perform other work roles existing in significant number in the national economy. (Tr. 49–50). Accordingly, the Law Judge concluded that Ms. Davis is not disabled, and that she is not entitled to supplemental security income benefits. See generally 20 C.F.R. § 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Davis has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4)

3

the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

As previously noted, the court referred the case to a magistrate judge for a report setting forth findings of fact, conclusions of law, and a recommended disposition. In his report, the magistrate judge recommended that the court affirm the final decision of the Commissioner denying the plaintiff's claim for supplemental security income benefits. Succinctly stated, the magistrate judge determined that substantial evidence supports the Law Judge's finding that Ms. Davis retains the residual functional capacity to perform certain light work roles and is therefore not disabled under the Social Security Act.

In her objections to the report and recommendation, Ms. Davis takes issue with the magistrate judge's findings and conclusions as to three of the issues raised in her motion for summary judgment. The first issue is whether the Law Judge's assessment of plaintiff's subjective allegations is supported by substantial evidence. Relying on the decision of the United States Court of Appeals for the Fourth Circuit in Brown v. Commissioner, 873 F.3d 251, 269 (4th Cir. 2017), Ms. Davis argues that the Law Judge did not build an accurate and logical bridge from the evidence to his conclusion that her testimony and subjective complaints were not credible.

Upon review of the record, the court agrees with the magistrate judge that the Law Judge's assessment of plaintiff's subjective allegations is supported by substantial evidence. Although Ms. Davis testified at the administrative hearing that she experiences totally disabling neck and back pain, numbness, joint swelling, and shortness of breath, the Law Judge found that the plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 47).

The Law Judge then discussed his reasoning for not fully crediting the plaintiff's statements regarding the severity of her symptoms. The Law Judge began by outlining the objective medical findings from examinations in 2015, during which Ms. Davis had some tenderness in her hands, diffuse muscle tenderness, and limited range of motion in her shoulder, but otherwise displayed normal grip strength, normal strength in her upper and lower extremities, normal spinal range of motion, no swelling or synovitis in her joints, and good range of motion in each joint. (Tr. 47). The Law Judge noted that when plaintiff developed joint stiffness and edema in her ankles, it "resolved rather quickly." (Tr. 47). By August of 2015, plaintiff "only displayed back and right ankle tenderness [and] otherwise had a good range of motion in each joint and a negative straight leg-raising test." (Tr. 47). The Law Judge also noted that plaintiff's "providers referred her to [physical therapy], but she only attended the initial evaluation, suggesting her symptoms were not as severe or as limiting as alleged." (Tr. 47).

The Law Judge then outlined subsequent medical examinations relevant to Ms. Davis' complaints of back pain. On October 29, 2015, plaintiff underwent a lumbar spine evaluation at Carilion Clinic. During the evaluation, Ms. Davis was found to have some tenderness in the lumbar region, pain with flexion and extension, and an antalgic gait "due to body habitus." (Tr. 458). However, the findings on physical examination were otherwise unremarkable. Ms. Davis exhibited a balanced standing posture, no difficulty with transitional movements, intact sensation, normal reflexes, and intact motor function except for a slight decrease in the right gastro-soleous complex secondary to ankle pain from a recent sprain. (Tr. 458). During subsequent examinations in December of 2015 and March of 2016, Ms. Davis exhibited normal range of motion in all extremities and no evidence of tenderness or edema. (Tr. 522, 527). The Law Judge accurately observed that certain records indicate that Ms. Davis "experienced some

regression during the next several months," primarily in the form of "tenderness, range of motion deficits, and episodic muscle spasms."[2] (Tr. 47). However, relevant diagnostic studies revealed no significant abnormalities. An MRI of plaintiff's lumbar spine revealed a "minimal broad-based disc protrusion at L5-S1." (Tr. 614, 765). Similarly, an MRI of plaintiff's cervical spine revealed only "[m]ild spondylotic/discogenic changes," including "some foraminal stenosis" from a "C5/6 disc bulge." (Tr. 757). When Ms. Davis returned to Carilion Clinic for a "lumbar/cervical spine recheck" in April of 2017, after receiving an epidural steroid injection, she was found to have normal motor function, normal muscle tone, well-perfused extremities, intact sensation, normal reflexes in all extremities, and no sensory deficits or sustained clonus. (Tr. 657–61). The examining physician advised the plaintiff to begin doing exercises at home. He also noted that surgery may be an option if her symptoms persist, but that "[t]herapy and continued pain management are [the] preferred treatment [options]." (Tr. 661).

With respect to plaintiff's respiratory conditions, the Law Judge noted that while plaintiff carried diagnoses of COPD and sleep apnea, pulmonary function testing in January of 2015 revealed no obstructive lung defect, and chest x-rays in February of 2015 showed clear lungs and no signs of pneumothorax or pleural effusion. (Tr. 48, 353, 391). Additionally, multiple treatment records reflect normal breath sounds and/or no signs of respiratory distress. (Tr. 412, 415, 419, 420, 422, 423, 520, 521, 527). The Law Judge accurately observed that although Ms. Davis "experience[d] several exacerbations during the period under adjudication, mostly associated with bronchitis or an upper respiratory infection, . . . she always quickly returned to baseline with conservative treatment." (Tr. 48).

---

[2] The court notes that other records reflect contrary findings. For instance, in August of 2016, when plaintiff underwent a successful ventral hernia repair, a review of systems revealed "[n]o back pain, joint pain, joint swelling, claudication, spasm, weakness, stiffness, arthritis, . . . numbness, [or] . . . headache," and plaintiff's extremities were noted to be "normal." (Tr. 597).

6

The Law Judge also noted that Ms. Davis reported engaging in activities of daily living that were not entirely consistent with complaints of disabling limitations. For instance, plaintiff's function reports indicate that plaintiff prepares simple meals on a daily basis, sits outside each day, shops for groceries, handles financial matters, watches television and movies, visits family, and is capable of going out alone. (Tr. 253–57).

Upon review of the record, the court is unable to discern any error in the Law Judge's credibility findings. Unlike Brown, the Law Judge considered plaintiff's medical history along with her own allegations regarding the symptoms of her physical impairments. The court agrees that plaintiff's allegations of totally disabling symptoms are somewhat inconsistent with the objective findings on examination, the plaintiff's treatment history, and her reported activities of daily living. Although the Law Judge may not disregard "the limited extent" of the daily living activities described by a plaintiff, Brown, 873 F.3d at 269, it is appropriate for a Law Judge to consider whether complaints of pain and other disabling limitations are consistent with evidence regarding the plaintiff's routine, non-work activities. See Johnson v. Barnhart, 434 F.3d 650, 652 (4th Cir. 2005) (holding that the Law Judge logically reasoned that the ability to engage in certain activities was inconsistent with the plaintiff's allegations of excruciating pain and an inability to perform such regular movements as sitting and walking). Ultimately, it is the province of the Law Judge to make credibility determinations and to resolve inconsistencies or conflicts in the evidence. See id. ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].") (alteration in original) (internal quotation marks omitted). In the instant case, the court is satisfied that substantial evidence supports the Law Judge's decision not to fully credit the plaintiff's testimony. Accordingly, the plaintiff's first objection is overruled.

In her second objection, the plaintiff argues that the magistrate judge erred in concluding that substantial evidence supports the Law Judge's assessment of the plaintiff's residual functional capacity ("RFC"). Ms. Davis contends that the Law Judge failed to properly consider her impairments on a function-by-function basis. In particular, Ms. Davis maintains that the Law Judge failed to make sufficient findings regarding her alleged inability to maintain a static work posture or her alleged need for unscheduled breaks and absences. Ms. Davis also argues that the Law Judge erred in failing to include any environmental limitations in the RFC determination.

Upon review of the record and applicable caselaw, the court agrees with the magistrate judge that the Law Judge's assessment of plaintiff's residual functional capacity is supported by substantial evidence. Although guidelines from the Social Security Administration instruct the Law Judge to take a "function-by-function" approach to determining a claimant's residual functional capacity, SSR 96-8p, 1996 SSR LEXIS 5, the United States Court of Appeals for the Fourth Circuit has "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015). Instead, the Court agreed with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

In this case, it is clear from the Law Judge's decision that he considered all of Ms. Davis' claimed limitations, including those described during the administrative hearing, but found that such limitations were inconsistent with the findings on physical examination, the conservative nature of the treatment provided, and other evidence of record. See, e.g., Sharp v. Colvin, 660 F. App'x 251, 259 (4th Cir. 2016) (affirming the Law Judge's determination that the plaintiff's

8

medical treatment, which included injections, pain medication, and physical therapy, "was conservative, and that her course of treatment supported a conclusion that she was able to maintain a routine work schedule"). The Law Judge expressly noted that plaintiff's "negative findings, limited treatment protocol, smoking habit, and retained abilities [to perform various activities of daily living] suggest she requires no greater limitations" than those included in the RFC assessment. (Tr. 48). The Law Judge also emphasized that his RFC findings were largely supported by the opinions of Dr. William Humphries, who performed a consultative examination on December 12, 2014, and the opinions of the non-examining state agency physicians, Dr. Luc Vinh and Dr. Richard Surrusco, each of whom opined that plaintiff's physical problems are not so severe as to prevent performance of a limited range of light work activity. (Tr. 48). Although Dr. Humphries also recommended that plaintiff avoid heights, hazards, and fumes (Tr. 344), the Law Judge ultimately determined, as did Dr. Vinh and Dr. Surrusco, that plaintiff does not require any environmental limitations. (Tr. 48, 102, 114). Instead, the Law Judge found that limiting plaintiff to light work with postural limitations would appropriately account for plaintiff's COPD and any associated shortness of breath. (Tr. 48). Upon review of the record, the court is convinced that the Law Judge's treatment of plaintiff's claimed limitations is consistent with the protocol established in Mascio and Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016), and that substantial evidence supports the Law Judge's evaluation of Ms. Davis's residual functional capacity. Accordingly, the plaintiff's second objection is overruled.

In her third and final objection, the plaintiff argues that the magistrate judge erred in concluding that the Law Judge properly considered the effects of her obesity. Guidelines from the Social Security Administration recognize that obesity "can cause limitation of function," and that an "assessment should . . . be made of the effect obesity has upon the individual's ability to

9

perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR No. 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002). However, obesity does not automatically "increase the severity or functional limitations" of other impairments, Id., and "the Law Judge need not 'include a lengthy analysis, or indeed, any precise analysis regarding obesity.'" Rowlett v. Berryhill, No. 7:17-cv-00070, 2018 U.S. Dist. LEXIS 10059, at *10 (W.D. Va. Jan 22, 2018) (quoting Richards v. Astrue, No. 6:11-cv-00017, 2012 U.S. Dist. LEXIS 92594, at *18 (W.D. Va. July 5, 2012)).

In this case, it is clear from the Law Judge's decision that he considered plaintiff's obesity in determining her residual functional capacity. The Law Judge listed plaintiff's obesity as one of several factors he considered in limiting plaintiff to a reduced range of light work, and he expressly noted that plaintiff's "obese body habitus" restricts "her ability to bend and lift." (Tr. 48). The Law Judge's assessment of plaintiff's obesity is consistent with that of Dr. Humphries, who determined that the combined effects of plaintiff's obesity and other impairments do not render her disabled or otherwise result in any additional exertional or postural limitations other than those found by the Law Judge. (Tr. 344). For these reasons, the court concludes that the Law Judge properly considered the impact of plaintiff's obesity in determining her residual functional capacity, and that substantial evidence supports the Law Judge's finding that this impairment does not prevent her from performing a limited range of light work. Consequently, the court must overrule the plaintiff's final objection.

In sum, after a de novo review of the record and for the reasons set forth above, the court is constrained to conclude that the final decision of the Commissioner is supported by substantial evidence. Accordingly, the plaintiff's objections to the magistrate judge's report are overruled,

the magistrate judge's recommendation will be adopted, and the final decision of the Commissioner will be affirmed.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 26th day of September, 2019.

/s/ Jackson L. Kiser
Senior United States District Judge